**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| IN RE: LUMBER LIQUIDATORS ) <br> CHINESE-MANUFACTURED FLOORING ) <br> PRODUCTS  MARKETING, SALES ) <br> PRACTICES AND PRODUCTS LIABILITY ) <br> LITIGATION, ) <br> _____ ) | MDL No.: 1:15-md-02627-AJT |

**THIS DOCUMENT RELATES TO ALL CASES**
_____

**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
FOR PRIVILEGED DOCUMENTS**

Defendant Lumber Liquidators, Inc. ("Lumber Liquidators"), by counsel and pursuant to Federal Rule of Civil Procedure ("Rule") 26(c), submits this Memorandum in Support of its Motion for Protective Order For Privileged Documents (the "Motion") stating as follows:

**I.     INTRODUCTION**

In early March of 2015, the Board of Directors of Lumber Liquidators established a Special Committee. *See* Declaration of Patrick R. Hanes, submitted *in camera*, at ¶ 4.  The Special Committee was tasked with investigating and responding to various matters against the company including a Grand Jury Subpoena, the Department of Justice's ("DOJ") investigation into Lacey Act violations, and a Securities and Exchange Commission ("SEC") investigation. *See id.* at ¶¶ 5-8.

Under that authority, the Special Committee, through its outside legal counsel to the Special Committee, Williams Mullen, began conducting its ongoing review of allegations regarding laminate sourced from China. *See id.* at ¶¶ 4-5.  As part of its investigation and litigation strategy, the Special Committee's outside counsel retained Freeh Group International

Solutions, LLC ("FGIS") as a non-testifying expert.[1]  *See id.*; *see also id.* at ¶¶ 9-19.  More specifically, attorneys employed by FGIS were to investigate the company's compliance, ethics, and sourcing programs and report the findings of their investigation to the Special Committee's outside counsel so that counsel could provide legal advice and strategy to the Special Committee regarding how to proceed with the pending investigations it was chartered to managed and respond to.  *See id.* at ¶¶ 20-23.

Pursuant to a work plan developed by FGIS in consultation with Williams Mullen, FGIS reviewed certain documents including opinion work product and attorney-client protected memoranda authored by outside counsel.  *See id.* at ¶¶ 24-25.  FGIS also selected certain Lumber Liquidators' employees to interview.  *See id.* at ¶ 26.  FGIS conducted those interviews, substantially all of which were also attended by Williams Mullen, and generated interview summaries.  *See id.*  Additionally, certain facts developed in FGIS's investigation were shared and discussed with the Special Committee's outside counsel as part of their investigation.  *See id.* at ¶ 34.

Plaintiffs have now requested that Lumber Liquidators produce FGIS's Final Report, dated August 5, 2015—outside the discovery cut off in this case—as a "test" case to determine whether any communications among FGIS, the Special Committee and Williams Mullen, or other documents from FGIS's investigation are protected as work product or by the attorney-client privilege.  *See* Pls.' Request for Production No. 6 (requesting "all documents related to the 'Special Committee's' and the FGIS International Solutions, LLC's review of your compliance

---

[1] After the 60 Minutes program aired, attorneys at FGIS initially contacted founder, Tom Sullivan, and proposed that Lumber Liquidators retain FGIS to conduct a review of its sourcing compliance program and related policies.  After being informed of FGIS's proposal to Mr. Sullivan, the Special Committee determined that FGIS should be engaged by the Special Committee though outside counsel, as opposed to Lumber Liquidators' management, to establish the independence of the review from management and to allow their work product to be directed and used by outside counsel.

program and related policies"); *see also* Email from D. McNamara to Magistrate Judge Jones dated Jan. 28, 2016.

Lumber Liquidators respectfully moves the Court for a Protective Order for the Final Report and any other documents, reports, and communications related to the FGIS's investigation because these documents are protected by the non-testifying expert rule, work product immunity, and/or the attorney-client privilege.

First, FGIS's communications, reports, interviews, and documents are protected from disclosure where FGIS is a non-testifying expert and generated work product in anticipation of litigation. Second, FGIS's communications, reports, interviews, and documents are protected by work product immunity because the investigation was motivated "because of" the existence of the Grand Jury, SEC, and DOJ matters. Third, communications between and among FGIS, Williams Mullen (outside counsel to the Special Committee), and the Special Committee are protected under the attorney-client privilege where FGIS was outside counsel's agent. Fourth, no waiver has occurred by sharing any outside counsel's or Lumber Liquidators' work product documents with FGIS.

## II.     PROCEDURAL HISTORY AND RULE 26(C)(1) CERTIFICATION

Plaintiffs and Lumber Liquidators have met and conferred pursuant to Rule 26(c)(1) regarding this privilege dispute but have not been able to reach an accord. Lumber Liquidators first asserted work product immunity and the attorney-client privilege to these documents on November 5, 2015, the date it responded to written interrogatories. On January 11, 2016, Lumber Liquidators restated its position, further explaining additional detail regarding FGIS's retainer.

On January 21, 2016, Plaintiffs replied by letter, disputing Lumber Liquidators' claim of work product immunity and attorney-client privilege. Lumber Liquidators responded on January 27, 2016. As is set forth in the most recent correspondence, FGIS's work since March 2015 can be separated into two categories: (1) FGIS's investigation performed at the request of and at the direction of outside counsel to the Special Committee and (2) FGIS's in-house work as a compliance advisor to Lumber Liquidators.

Lumber Liquidators is not claiming privilege or work product immunity over FGIS's work as an in-house compliance advisor. Lumber Liquidators, however, continues to assert work product immunity and privilege protections over documents and communications shared with FGIS by the Special Committee and/or Williams Mullen, or generated as a result of FGIS's investigation at the direction of counsel to the Special Committee. Plaintiffs and Lumber Liquidators have not been able to reach a resolution as of the date of the filing of this Motion.

### III.     ARGUMENT

    **A.     FGIS's communications, reports, interviews, and documents are protected from disclosure where FGIS is a non-testifying expert and generated work product in anticipation of litigation.**

        **1.     FGIS is a non-testifying expert under Rule 26(b)(4)(D).**

Facts or opinions known "by an expert who was retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" may not ordinarily be discovered. *MeadWestvaco Corp. v. Rexam*, PLC, No. 1:10CV511 GBL/TRJ, 2011 WL 2938456, at *6 (E.D. Va. July 18, 2011). As such, documents containing "facts known or opinions held" by non-testifying experts may only be disclosed upon a showing of "exceptional circumstances under which it is impracticable for [a]

party to obtain facts or opinions on the same subject by other means." *Id.* (quoting Fed R. Civ. P. 26(b)(4)(D)(ii)).  This is a "very high" burden to meet.  *Id.*

Courts that analyze whether a party is a non-testifying expert look to certain factors to determine whether Rule 26(b)(4)(D)'s discovery restrictions apply.  Specifically, courts have "weighed factors such as the timing of retention of the non-testifying expert in relation to the litigation at issue and the existence of evidence including supporting affidavits and engagement letters."  *U.S. Inspection Servs., Inc. v. NL Engineered Sols., LLC*, 268 F.R.D. 614, 619 (N.D. Cal. 2010); *see also MeadWestvaco Corp.*, 2011 WL 2938456, at *6 (party not required to disclose materials "because non-testifying experts prepared this information at the direction of Defendant's counsel" after party was sent cease-and-desist letters and reasonably anticipated litigation).

Several public policy considerations "underlie the rule creating a safe harbor whereby facts and opinions of non-testifying, consulting experts are generally shielded from discovery," including:

> (1) encouraging counsel to obtain necessary expert advice without fear that the adversary may obtain such information; (2) preventing unfairness that would result from allowing an opposing party to reap the benefits from another party's efforts and expense; (3) preventing a chilling effect on experts serving as consultants if their testimony could be compelled; and (4) preventing prejudice to the retaining party if the opposing party were allowed to call at trial an expert who provided an unfavorable opinion to the party who first retained them.

*Plymovent Corp. v. Air Technology Solutions, Inc.*, 243 F.R.D. 139 (D.N.J. 2007).

Here, FGIS's communications, reports, interviews, and documents are protected from disclosure where FGIS is a non-testifying expert retained by counsel in anticipation and in the course of litigation.  First, the executed engagement letter from outside counsel at Williams Mullen to the managing director of FGIS states that Williams Mullen, as counsel for and on

5

behalf of the Special Committee, wishes to retain FGIS as a non-testifying consultant and that FGIS's work product will be used to "assist [counsel] . . . in formulating appropriate legal advice to the Special Committee." *See* Declaration at ¶¶ 15-16 and corresponding exhibit.

Second, FGIS was retained not only in anticipation of litigation, but also during the course of active litigation. The Special Committee's internal investigation, which began after the *60 Minutes* news report aired in March 2015, several months after the filing of the first case which was eventually consolidated into the MDL litigation[2], and amidst ongoing investigations by the DOJ, CARB, the SEC and other governmental and regulatory agencies, is being conducted solely through outside counsel retained by, and who report directly to, the Special Committee. FGIS would not have been retained but for the ongoing government and regulatory investigations.

Third, the initial results of FGIS's investigation—including the reports, interviews, and findings that were generated—were ultimately used for litigation purposes. *See* Declaration at ¶¶ 34-39. The Final Report generated by FGIS's investigation was provided to Williams Mullen and the Special Committee. *See id.* at ¶ 31. It was not provided to any Lumber Liquidator employees other than Jill Witter, Lumber Liquidators' new Chief Compliance and Legal Officer. This report, as well as information reported to Williams Mullen during the course of FGIS's investigation, has been used by outside counsel in framing its legal strategy and advice to the Special Committee regarding ongoing matters.

As such, the "timing of retention" and the "existence of evidence including supporting affidavits and engagement letters" all point to FGIS's role as a non-testifying expert. *See U.S. Inspection Servs., Inc.*, 268 F.R.D. at 614.

---

[2] *Balero v. Lumber Liquidators*, RG14751116

### 2. Plaintiffs cannot demonstrate "exceptional circumstances."

Courts may find "exceptional circumstances to order the production of non-testifying expert records when it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by any other means, or the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observes it but before the moving party's expert has an opportunity to observe it." *U.S. Inspection Servs., Inc.*, 268 F.R.D. at 623.

Here, Plaintiffs cannot demonstrate that they can satisfy the "very high" burden of demonstrating "exceptional circumstances." *MeadWestvaco Corp.* 2011 WL 2938456, at *6. Plaintiffs have retained their own experts to investigate Lumber Liquidators' compliance policies and programs and whether Lumber Liquidators' laminate wood products comply with CARB emissions standards. Plaintiffs have access to thousands of documents on this issue and have already scheduled multiple depositions of current and former employees, including Robert Lynch, Ray Cotton, and Chris Battin. Plaintiffs cannot show the exceptional circumstances "under which it is impracticable for [a] party to obtain facts or opinions on the same subject by other means." *Id.*

### B. FGIS's communications, reports, interviews, and documents are protected by work product immunity where the investigation was motivated "because of" the prospect and existence of litigation.

The work product doctrine limits discovery of documents "in anticipation of litigation." *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. CIV.A. 3:09CV58, 2010 WL 1489966, at *3 (E.D. Va. Apr. 13, 2010). A document that is prepared "*because of* the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation" is protected work product.

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992) (emphasis added).

Courts have protected documents and reports that are generated as a result of a corporate investigation that was motivated "because of" and in anticipation of litigation. *See, e.g.*, *California Earthquake Auth. v. Metro. W. Sec., LLC*, 285 F.R.D. 585 (E.D. Cal. 2012) (documents and correspondences generated by third-party auditing firm's investigation into company's investment loss was work product); *Westernbank Puerto Rico v. Kachkar*, No. CIV. 07-1606 ADC/BJM, 2009 WL 530131 (D.P.R. Feb. 9, 2009) (reports and related documents prepared by third-party accounting firm merited work product protection, since "the accounting firm was retained, at least in part, to analyze facts relevant to company's claims and defenses in litigation cases"); *In re Stone Energy Corp.*, No. CIV.A.05-2088(LEAD), 2008 WL 4868086, at *4 (W.D. La. Nov. 4, 2008) (documents generated by law firm's investigation into possible wrongdoing in company was protected by work product immunity).

Here, FGIS's internal investigation was not commissioned in the ordinary course of business. The investigative report, the interview summaries, and other documents that were generated from the investigation only exist "because of" the prospect and reality of ongoing litigation—primarily to assist the company evaluate the strength of the company's claims and defenses in responding to the DOJ and SEC investigations. *See* Declaration at ¶¶ 6-8, 34-39. Additionally, Plaintiffs cannot demonstrate "substantial need" of these work product documents for the same reasons they cannot demonstrate the even higher standard of proving "exceptional circumstances," as explained in *supra* Section IV. A. 2.

8

### C. Communications between and among FGIS, Williams Mullen, and the Special Committee are protected by the attorney-client privilege.

In addition to FGIS's documents being protected from disclosures under Rule 26(b)(4)(D) and under the work product doctrine, communications between and among FGIS, Williams Mullen, and the Special Committee are also protected by the attorney-client privilege where FGIS was outside counsel's agent and assisted counsel in rendering legal advice to the company.

Virginia law follows the federal rule of recognizing that the "attorney-client privilege" attaches to communications made to the "the attorney's agents, including accountants, when such agent's services are indispensable to the attorney's effective representation of the client." *Commonwealth v. Edwards*, 235 Va. 499, 508–09, 370 S.E.2d 296, 301 (1988) (quoting *United States v. Cote*, 456 F.2d 142, 144 (8th Cir.1972) and *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir.1961). The Fourth Circuit has acknowledged that it has "never been questioned that the [attorney client] privilege protects communications to the attorney's clerks, and his other agents . . . for rendering his services." *United States v. (Under Seal)*, 748 F.2d 871, 874 (4th Cir. 1984) (quoting 8 WIGMORE ON EVIDENCE at § 2301 (McNaughten Rev. 1961)); *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190-91 (4th Cir. 1991) (citing to *Kovel* for proposition that attorney client privilege extends to communications with agents).

Here, FGIS's internal investigation of Lumber Liquidators was "indispensable" to outside counsel's rendering "effective consultation between the client and the lawyer." *See* Declaration at ¶ 33; *see also Edwards*, 235 Va. at 508-09; *Kovel,* 296 F.2d at 922. FGIS had extensive expertise with conducting independent investigations into potential regulatory and legal claims faced by corporations, and assisted outside counsel in rendering effective advice to the Special Committee at Lumber Liquidators. *See Great Lakes Transp. Holding LLC v. Yellow Cab Serv.*

9


*Corp. of Fla.*, Inc., 2011 U.S. Dist. LEXIS 136966, *23-24 (S.D. Fla. Nov. 29, 2011) (investment banking firm found to be lawyer agent where firm was a "third part[y] employed to assist a lawyer in rendering legal advice"); *Olson v. Accessory Controls & Equip. Corp.*, 254 Conn. 145, 158, 757 A.2d 14, 23 (2000) (report prepared by environmental company, which was hired by employer's attorney to assist attorney in providing employer with legal advice regarding government order as to employer's waste practices, fell within attorney-client privilege); *In re Hardwood P-G, Inc.*, 403 B.R. 445, 459 (Bankr. W.D. Tex. 2009) (forensic accounting report, prepared to aid communications between client and its counsel in "evaluating potential causes of action," is a "privileged attorney-client communication").

Finally, FGIS's internal investigation was conducted to assist counsel in providing *legal*, as opposed to business, advice. While FGIS's in-house work as a compliance advisor to Lumber Liquidators may arguably be considered "business" advice—and Lumber Liquidators is not challenging the documents generated from FGIS's role as an in-house compliance advisor—FGIS's internal investigation was to assist counsel in providing legal advice.

Specifically, FGIS performed its investigation at the request of and at the direction of outside counsel to the Special Committee so that counsel could render effective legal advice in evaluating the strength of the company's claims and defenses in ongoing and prospective litigation with the DOJ and other governmental and regulatory agencies. *See* Declaration at ¶¶ 33. FGIS's investigation was directed to Williams Mullen and interim communications reporting on the investigation were made to Williams Mullen or the Special Committee and Williams Mullen concurrently, not to Lumber Liquidators' employees. *See id.* at ¶¶ 30-32. As explained in more detail from the attached Declaration and *in camera* documents, the report and

findings generated from FGIS's investigation were *actually* used for litigation purposes. *See id.* at ¶¶ 34-39.

### D. No waiver has occurred by sharing Lumber Liquidators' or outside counsel's work product documents with FGIS.

During the FGIS's investigation, a number of work product documents—created by Lumber Liquidators and by outside counsel in anticipation of litigation with the DOJ, other governmental and regulatory agencies, and in anticipation of the MDL litigation—were shared with FGIS. *See* Declaration at ¶ 25.

No waiver of work product occurs when a document is shared with a friendly third party who is not a litigation adversary. *See Kolon Indus., Inc.*, 2010 WL 1489966, at *4 ("when privileged material is shared with a third party who is an ally of the discloser, one who has 'common interests' with the disclosing party, such disclosure . . . does not waive the work product privilege") (citations omitted). Here, FGIS was retained by outside counsel to help counsel formulate legal advice to the Special Committee. FGIS shared a common interest with Lumber Liquidators and "privilege material . . . shared" with the FGIS "does not waive the work product privilege. *Id.* Furthermore, an expectation of confidentiality was maintained and required by the retention letter. *See* Declaration at ¶¶ 15-16 and corresponding exhibit. Thus, documents originally created by Lumber Liquidators in anticipation of litigation do not lose work product protections by being shared with FGIS.

Moreover, some of these documents that were shared with FGIS contain attorney opinion work product generated in Lumber Liquidators' internal investigation and during the company's defense of the DOJ's Lacey Act criminal investigation—including attorney-created legal memoranda, presentations to the Board of Directors, and interview summaries. Opinion work product receives "nearly absolute immunity" in the Fourth Circuit. *In re Allen*, 106 F.3d 582,

11

607 (4th Cir. 1997) (quoting *In re Grand Jury Proceedings, Thursday Special Grand Jury*, 33 F.3d 342, 348 (4th Cir.1994)).

## IV. CONCLUSION

For the foregoing reasons, Defendant Lumber Liquidators moves this Honorable Court for an Order:

A. Providing that Lumber Liquidators need not disclose the FGIS Final Report, communications, reports, interview summaries, and other FGIS documents;

B. Providing such other and further relief as the Court may deem just and proper.

Date: February 1, 2016

Respectfully Submitted,

LUMBER LIQUIDATORS, INC.

By Counsel

*/s/ William L. Stern*
William L. Stern (Pro Hac Vice)
E-mail: wstern@mofo.com
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
415.268.7000 (Telephone)
415.268.7522 (Facsimile)
*Defendants' Co-Lead Counsel*

*/s/ Diane P. Flannery*
Diane P. Flannery (VSB No. 85286)
E-mail: dflannery@mcguirewoods.com
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219-3916
804.775.1015 (Telephone)
804.698.2047 (Facsimile)
*Defendants' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2016, a true and correct copy of the foregoing was filed electronically with the clerk of this Court using the CM/ECF system, and in accordance with Local Rules and the procedures adopted in the Initial Order and Pretrial Order No. 1A. This filing will cause a copy of the same to be served, via a Notice of Electronic Filing, upon counsel of record in this matter who has consented to electronic service.

                                                              */s/ Diane P. Flannery*
                                                              Diane P. Flannery, Esq. (VSB No. 85286)
E-mail: dflannery@mcguirewoods.com
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
804.775.1015 (Telephone)
804.698.2047 (Facsimile)
*Defendants' Co-Lead Counsel*